UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SHIRLEY CLYMER,**

       **Plaintiff,**                    **CIVIL ACTION NO. 13-cv-11838**

       **v.**                                **DISTRICT JUDGE DAVID M. LAWSON**

**COMMISSIONER OF**                **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Shirley Clymer seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (Docket no. 8) and Defendant's Motion for Summary Judgment (Docket no. 9). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 2.) The undersigned has reviewed the pleadings, dispenses with a hearing, and issues this Report and Recommendation pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.   RECOMMENDATION**

The undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket no. 8) be DENIED and that Defendant's Motion for Summary Judgment (Docket no. 9) be GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits with a protective filing date of July 14, 2010, alleging disability beginning February 1, 2006, due to right knee disorder, osteoporosis, radiculopathy at L-4, acid reflux disease, anxiety, and depression. (*See* TR 17, 19.) The Social Security Administration denied Plaintiff's claim on November 12, 2010, and Plaintiff requested a *de novo* hearing, which was held on August 11, 2011, before Administrative Law Judge (ALJ) Kathleen H. Eiler, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 17, 27.) The Appeals Council declined to review the ALJ's decision (TR 1-3), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND THE VOCATIONAL EXPERT'S TESTIMONY

### A. Plaintiff's Testimony and the Medical Evidence of Record

In her brief, Plaintiff sets forth a short procedural history of this matter and discusses the ALJ's basis for denying her benefits, but she does not directly discuss her testimony or medical record. (Docket no. 8 at 5.) Fleeting references to Plaintiff's testimony and medical record are made when Plaintiff argues credibility. (Docket no. 8 at 10-11.) Defendant has not provided a separate account of Plaintiff's testimony and medical record, but refers to both frequently throughout her brief to support her position. (*See* docket no. 9.) The undersigned has conducted an independent review of the hearing transcript and Plaintiff's medical record, but for the reasons discussed *infra*, it is unnecessary to summarize them herein. Therefore, Plaintiff's medical record and testimony as set forth in the ALJ's decision (TR 22-25) and Plaintiff's brief (Docket no. 8 at 10-11) are adopted;

the undersigned will incorporate comments and citations as necessary throughout this Report and Recommendation.

### B. Vocational Expert's Testimony

The ALJ asked the Vocational Expert (VE) whether a hypothetical person of the same age, education, and work experience as Plaintiff who can "perform work at the light exertional level," "occasionally climb, crouch, kneel, or crawl," and "frequently balance or stoop," but should "never operate foot pedals with her right lower extremity" and "avoid concentrated exposure to extreme cold, wetness, vibration, and workplace hazards such as moving machinery and unprotected heights" could perform Plaintiff's past relevant work. (TR 49.) The VE testified that such an individual could perform Plaintiff's past relevant work as a cashier, which is light, unskilled work. (TR 49.)

The ALJ then asked the VE whether there would be any other jobs that this person could perform. (TR 49.) The VE testified that such an individual would be able to be a small products assembler for which there were 2,100 jobs in the regional economy and 20,800 jobs in the national economy, an inspector and hand packager for which there were approximately 1,000 jobs in the regional economy and 25,000 jobs in the national economy, and a cashier for which there were 15,000 jobs in the regional economy and 1,000,000 jobs in the national economy. (TR 49-50.)

Lastly, the ALJ asked the VE whether there would be any work for that same hypothetical person if she were to miss at least three days of work per month. (TR 50.) The VE responded that such absenteeism would "preclude competitive employment." (TR 50.)

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2009, and that she did not engage in substantial gainful activity from the alleged onset date of February 1, 2006, through March 31, 2009. (TR 19.) The ALJ then found that Plaintiff

suffered from the following severe impairments: "right knee disorder; osteoporosis; radiculopathy at L4; and acid reflux disease." (TR 19.) The ALJ also found, however, that Plaintiff's mental impairments of anxiety and depression were non-severe and that her impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Subpart 404, Subpart P, Appendix 1. (TR 20-21.) The ALJ then determined that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant could occasionally climb, crouch, kneel, and crawl. She could frequently balance and stoop. However, the claimant could never operate foot pedals with her right lower extremity. The claimant must also have avoided concentrated exposure to extreme cold, wetness, vibration, and workplace hazards such as moving machinery and unprotected heights.

(TR 21-22.) Subsequently, in reliance on the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a cashier as well as a significant number of other jobs in the national economy. (TR 25-26.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from February 1, 2006, through March 31, 2009. (TR 27.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed

disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at \*8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded under sentence four because "[t]he Commissioner erred as a matter of law in assessing [Plaintiff's] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [Plaintiff's]

6

impairments." (Docket no. 8 at 6.)

### 1. *Plaintiff's Hypothetical Question Argument*

To the extent Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE, the ALJ is only required to incorporate in his hypothetical questions those limitations that he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ's hypothetical questions presented all of the limitations included in Plaintiff's RFC–that is, all of the limitations that the ALJ found credible. The VE testified that there are jobs available for a person with these limitations. Thus, the ALJ's hypothetical questions were not improper, and in substance, Plaintiff's motion asserts that the ALJ erred in determining Plaintiff's RFC when she failed to properly assess Plaintiff's credibility and evaluate the medical opinions.

Plaintiff's argument fails, as her entire discussion of this matter is limited to several pages of legal standards and a few vague references to her testimony and medical records. (*See* docket no. 8.) Plaintiff does not discuss why she believes the ALJ erred, what medical records or opinions or evidence the ALJ failed to properly consider, or what additional impairments the ALJ allegedly failed to include in her hypothetical questions to the VE. As the Court addressed in a similar matter wherein Plaintiff's counsel filed a substantially similar brief on this issue, any additional analysis "is an exercise left to the reader; . . . Plaintiff's summary judgment brief lack[s] any survey, much less meaningful discussion, of the medical record, and Plaintiff likewise fail[s] to provide any factual basis for h[er] challenge to the ALJ's [decision]." *Fielder v. Comm'r of Soc. Sec.*, No. 13-10325, 2014 WL 1207865, *1 (E.D. Mich. Mar. 24, 2014) (Rosen, J.). Thus, Plaintiff's Motion should be denied with regard to this issue.

### 2. *Plaintiff's Credibility Argument*

7

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

8

Plaintiff asserts that the ALJ erred when she found that Plaintiff was not credible because "[h]er testimony is backed up by the medical evidence. . . ." (Docket no. 8 at 10.) To support this argument, Plaintiff follows with vague references to her medical record:

> Her medical records indicated that on 3/24/2009 she had an "esophagogastroduodenoscopy with gastric biopsies" and "a 48-hour bravo ph deployment." (Tr. 203)
>
> Also in a progress note dated 3/31/2009 it indicates diagnoses of "bilateral L4 radiculopathy," "chronic pelvic pain," and "chronic bilateral intercostals neuralgia." (Tr. 280) That report also indicated that she had had an EMG on 2/23/2009 which "revealed bilateral L4 radiculopathy" and that on "this visit she complains of severe bilateral leg pain." (Tr. 280) The visit dated 2/23/2009 indicated "complaints of shooting pain from the lower back radiating to both hips and posterior aspect of the left lower extremity and lateral aspect of the right lower extremity," "numbness in the left gluteal area, weakness both legs on occasion." (Tr. 281) Also see, (Tr. 282) The visit 12/16/2008 also gave a diagnoses of "chronic pelvic pain" and "chronic bilateral intercostal neuralgia." (Tr. 286) Also see, (Tr. 287) Additionally, in a record dated 8/2/2007 it indicates that she has vomiting which occurs in the morning, has no aggravating factors, and "the symptoms have been associated with back pain." (Tr. 423)
>
> She also has had a total knee replacement on 7/18/2007 of her right knee. (Tr. 289) Additionally, in a record dated 3/12/2009 it indicates that "she states that she still has some numbness around the knee" which is "localized to the anterior thigh." (Tr. 647) See also, (Tr. 649).

*(Id*. at 10-11.) As with Plaintiff's hypothetical question argument, *supra*, Plaintiff's credibility argument is devoid of factual detail and legal analysis. Even assuming, *arguendo,* that Plaintiff's medical records are consistent with her complaints, these consistencies are not sufficient to overturn the ALJ's credibility determination, as the evidence also supports the ALJ's findings. In addition to considering Plaintiff's medical records, the ALJ considered the factors set forth in 20 C.F.R. § 416.929(c)(3) and found that Plaintiff's disability allegations were less than credible for the following reasons:

> In assessing the claimant's credibility, the undersigned first notes that the claimant has not generally received the type of medical treatment one would expect for a

9

> totally disabled individual. While the claimant did undergo a total right knee replacement, the record suggests this surgery was generally successful in relieving her symptoms. The claimant also described daily activities that are not limited to the extent one would expect given her allegations of disabling symptoms. For example, the claimant testified at the hearing that, during the period at issue, she engaged in grocery shopping, doing light housework, doing laundry, caring for her personal hygiene, taking short walks, and watching television (Ex. 4F/12). Additionally, even though the claimant has not reported any improvement in her alleged impairments, she reported several more daily activities in a September 2010 adult function report. These activities include driving occasionally, preparing meals daily, washing dishes, vacuuming, sweeping, making her bed, handling her personal finances, babysitting her grandchildren occasionally, caring for family pets, and watering plants (Ex. 4E). A third party function report completed by the claimant's husband, Larry Clymer, generally corroborates these activities of daily living (Ex. 3E). Because of these inconsistencies, the undersigned finds that the claimant's statements concerning the intensity, persistence and limiting effects of her alleged symptoms are not fully credible.

(TR 24.) There is substantial evidence in support of the ALJ's decision. And where the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella*, 708 F.2d at 1059, and even if substantial evidence also supports the opposite conclusion. *See Her,* 203 F.3d at 389-90.

### 3. Waiver and Sanctions

The undersigned has carefully examined Plaintiff's counsel's submission and finds it thoroughly deficient and devoid of proper factual substance and legal analysis. Plaintiff's counsel's superficial, cut-and-paste, template approach to fulfilling his professional duty to substantively brief the issues presented for this Court's most serious consideration and determination fails to comply with all accepted rules of civil pleading and practice in this District. The Court acknowledges that counsel may reduce costs and improve efficiency by using and inserting previously generated work product, such as any relevant applicable legal standards and specific rules. But Plaintiff's counsel's repeated failure to set forth factually specific, discernable, sound legal analyses in his briefing to this Court compels the waiver of any such arguments. *See Kennedy v. Comm'r of Soc. Sec.*, 87

Fed.Appx. 464, 466 (6th Cir. 2003) ("[I]ssues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996)). The "'court is under no obligation to scour the record for errors not identified by [the] claimant.'" *Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, *14 (E.D. Mich. Jan 25, 2013) (Grand, M.J.) (quoting *Martinez v. Comm'r of Soc. Sec.*, No. 09-13700 (E.D. Mich. Mar. 2, 2011)). Therefore, Plaintiff's Motion should be denied.

As Chief Judge Rosen noted in *Fielder*, this is not the first time the Court has denied a motion filed by Plaintiff's counsel for "reliance on conclusory assertions and absence of developed argument;" indeed, "nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel." 2014 WL 1207865, at *1 n.1 (collecting cases). Moreover, the Court warned Plaintiff's counsel that "this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case" and that failure to do so may result in either sanctions or referral for disciplinary proceedings. *Id.* Nevertheless, any consideration of an award of sanctions against Plaintiff's counsel in this case would be inappropriate as the instant Motion was filed prior to Chief Judge Rosen's decision in *Fielder*.

## VI.     CONCLUSION

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket no. 8) be DENIED and that Defendant's Motion for Summary Judgment (Docket no. 9) be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 30, 2014            s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 30, 2014            s/ Lisa C. Bartlett
                                Case Manager